IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VINCENT RUSSO,

    Petitioner,

v.

ROBERT AYERS JR., Warden,

    Respondant.

No. C 07-01504 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Vincent Russo filed this habeas corpus petition pursuant to 28 U.S.C. 2242. In his petition, Russo argues that the Board of Prison Terms unconstitutionally denied him parole in 2005, twenty years after he was convicted of attempted murder and kidnaping to commit robbery. For the below stated reasons, this order holds that "some evidence" existed for denying Russo parole, that Russo received adequate individual consideration, and that Russo's continued commitment does not violate the Eighth Amendment. Accordingly, Russo's petition is **DENIED**.

## STATEMENT

Petitioner Vincent Russo is an inmate in the California state prison system, serving a term of seven years to life with the possibility of parole. Russo was convicted in 1985 on counts of attempted murder and kidnaping to commit robbery (Ans. Exh. B at 7). The seven-year sentence for attempted murder was stayed, pending completion of the life sentence for the kidnaping charge.

The following facts are not in dispute. Russo committed the crimes leading to his imprisonment while serving as a sergeant in the U.S. Marine Corps. After stealing guns from Camp Pendleton Marine Base in southern California, Russo and his roommate proceeded to rob several liquor stores in the area. On December 22, 1978, Russo robbed the Stage Stop Liquor Store in Ramona, California. Russo ordered the clerk, Dale Scott Eaton, to the ground while he took $515 from the cash register. Russo then forced Eaton into Russo's car. Holding a gun against Eaton's head, Russo drove for 35 minutes to a rural area, where he forced Eaton to lie down on the side of the road. Russo then shot Eaton five times: twice in the head, once in the left bicep, once in the right forearm, and once in the left cheek (Ans. Exh. D at 9, Exh. G at 3). Leaving Eaton at the scene of the crime, Russo drove away. Eaton survived the shooting.

The circumstances of the shooting remain in dispute. According to Eaton and the Board of Prison Terms, Russo threatened Eaton's family and said "Merry Christmas" before shooting Eaton. Russo argues, however, that he sensed Eaton moving and pulled the trigger as he hit Eaton in the head with the gun; he then "panicked and pulled the trigger four more times" (First Amd. Pet. 7; Ans. Exh. D at 11; Ans. Exh. G at 3). Russo denies that he ever said "Merry Christmas" to Eaton or that he intentionally shot Eaton (Trav. at 2).

After the shooting, Russo left California with his girlfriend and her daughter. Russo and his family members remained at large for seven years, living under false identities in Canada, New York, Florida, Texas and Pennsylvania until his arrest on January 14, 1985. He kept a clean criminal record after the alleged attempted murder, working as a restaurant manager for part of the time before his arrest. Russo was arrested by the FBI in Pennsylvania in 1985, seven years after the offense. In a plea bargain, Russo pled guilty to attempted murder and kidnaping to commit robbery. He received a life sentence, with the possibility of parole beginning in seven years. Russo has now been incarcerated for 22 years (Ans. Exh. G at 3; First Amd. Pet. 8; Ans. Exh. C at 6).

Russo had no prior criminal history before 1978, and aside from one report for participation in a work strike in 1987, he has had no disciplinary record in prison. A

psychological evaluation of Russo found his violence potential to be "below average" for the inmate population (Ans. Exh. D at 31).

Although Russo became eligible for parole in 1991, he has been denied parole eight times, including the challenged parole hearing in 2005. In the 2005 parole hearing, the Board of Prison Terms declared that Russo continued to pose an unreasonable risk of danger to society if released. The parole decision rested on the following factors: (1) the "especially cruel and callous manner" of Russo's offense; (2) the panel's interpretation of Russo's act as a "calculated," "dispassionate" effort to eliminate a potential witness — an "execution type offense"; (3) the panel's concern about "statements that were made such as Merry Christmas"; (4) the fact that five shots were fired; (5) Russo's contradictory statements to psychiatrists about why he had shot Eaton, which alternately characterized the shooting as accidental or as self-defense; and (6) the panel's finding that Russo had not expressed remorse for his crime. After evaluating these factors, the board denied Russo parole and refused to set a parole date until his next parole hearing (Ans. Exh. E at 71–75).

Russo challenged the denial of parole in August of 2005. Russo's first petition for writ of habeas corpus was heard by the San Diego County Superior Court, which denied relief on October 17, 2005. The superior court relied on *In re Rosenkrantz,* 29 Cal. 4th 616, 656 (2002), which held that there need only be "some evidence" for the board's decision to deny parole. Based on *Rosenkrantz* and *In re Powell*, 45 Cal. 3d 894, 904 (1988), the superior court argued that the board has wide discretion in parole decisions, which cannot be set aside unless the board acted "without information, fraudulently, or on mere personal caprice." In adjudging Russo's case, the superior court found that the board had met the *Rosenkrantz* standard of "some evidence" for denying parole, based on the factors involved in Russo's offense, and that under *Powell* their decision should not be set aside (Ans. Exh. F at 1–3).

Russo appealed the superior court's ruling, and the California Court of Appeal denied Russo's appeal on January 20, 2006. The court of appeal emphasized that parole applicants in California generally have an expectation of parole, but that they can be found unsuitable for parole in the light of circumstances specified by statute and regulation. Applying *In re*

1  *Dannenberg*, 34 Cal. 4th 1061, 1084 (2005), the court of appeal held that statutory concern for
2  the public safety trumps any expectation by an indeterminate life offender of parole by a given
3  date.  After reviewing the facts, the court of appeal denied Russo's appeal, finding factual
4  support for the board's judgment: "[T]he Board's conclusion that the crime showed a callous
5  disregard for the suffering of the victim and Russo showed no remorse is supported by the facts
6  of the crime, his flight and efforts to avoid arrest for seven years" (Ans. Exh. G at 1–3).  On
7  October 11, 2006, the California Supreme Court summarily denied Russo's petition, without
8  writing an opinion (Ans. Exh. H at 1).  Russo filed the instant petition for a writ of habeas
9  corpus on March 15, 2007 (First Amd. Pet. 1).  This court has jurisdiction pursuant to 28 U.S.C.
10  2254.

**ANALYSIS**

Persons in custody pursuant to a state judgment may be freed by a district court if they are held in violation of the Constitution, laws, or treaties of the United States.  They must, however, exhaust their remedies in state court, or demonstrate that such appeals either are unavailable or ineffective.  If a petitioner advances a claim that was decided in state court on the merits, the petitioner must establish that either:  (1) the state court decision was *contrary to* clearly established federal law, as determined by the Supreme Court; (2) involved an *unreasonable application of* clearly established federal law, as determined by the Supreme Court; or (3) was based on an *unreasonable determination of the facts* in light of the evidence presented in state court.  28 U.S.C. 2254(a), (b)(1), (d).

A state court's decision can be overruled as "contrary to" federal law if it fails to apply the correct Supreme Court authority or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision.  A state court can also be overruled if it used federal law unreasonably.  There are two ways it may so err:  (1) by applying the governing Supreme Court rule to a new set of facts in a way that is objectively unreasonable, or (2) by extending or failing to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  Clearly established federal law exists only in the holdings, but not in the dicta, of Supreme Court decisions.  *See Williams*

4

*v. Taylor*, 529 U.S. 362, 405–12 (2000). The applicable law is also limited to those decisions handed down before the state court issued its decision. *See Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Determinations of factual issues by a state court must be presumed correct. They can only be rebutted by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

When evaluating the state court's adjudication, federal courts examine the last reasoned judgment of a state court, not later, unexplained decisions upholding that judgment. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, the last reasoned state-court decision was the court of appeal's decision.

### 1. ALLEGED DUE PROCESS VIOLATION.

Russo contends that his due process rights were violated when he was denied parole. The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." When evaluating a claim brought under the Due Process Clause, there are two steps: *first*, is there any constitutionally protected interest at all and, *second*, if there is a constitutionally protected interest, did the state provide the requisite procedural protections.

#### A. Existence of a Protected Liberty Interest.

Respondent denies that Russo has a protected liberty interest in parole. Respondent acknowledges, however, that this issue was recently decided by the Ninth Circuit in *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006). In *Sass*, the Ninth Circuit plainly held that California prisoners do have "a constitutionally protected liberty interest in a parole date." Respondent merely wishes to preserve the argument for appeal (Br. 4). In light of respondent's position, this order briefly explains why Russo has a constitutionally protected liberty interest in parole.

In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 12 (1979), the United States Supreme Court held that a state's statutory parole scheme may create "a presumption that parole release will be granted" if it uses mandatory rather than permissive language. The *Greenholtz* court held that where Nebraska's parole statute provided that the parole board "shall order" release of eligible inmates, that presumption of parole gave rise to a

constitutionally-protected liberty interest that could not be denied without adequate due process of law. *Id*. at 11–16. The Supreme Court revisited this issue in *Board of Pardons v. Allen*, 482 U.S. 369, 376–78 (1987). In *Allen*, the Supreme Court held that where Montana's statutory parole scheme instructed that the parole board "shall" release a prisoner absent certain conditions, the prisoner had a liberty interest in parole even though the parole board had great discretion. *Id.* at 381.

Under California law, the Board of Prison Terms "shall set a release date unless it determines that the gravity of the current convicted offense . . . is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code 3041(b). By using such mandatory language, California's parole scheme gives rise to the same liberty interest recognized in *Greenholtz* and *Allen*. The Ninth Circuit has recognized that "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause." *Biggs v. Terhune*, 334 F.3d 910, 915–16 (9th Cir. 2003). This principle was more recently reaffirmed in *Sass*, 461 F.3d at 1128.

For these reasons, Russo has a constitutionally protected liberty interest in parole. Accordingly, this Court has jurisdiction over this petition. This order now addresses whether the state provided Russo with adequate due process.

### B. Requisite Due Process Protections.

#### (1) *Some Evidence Existed For Russo's Conviction*.

The Ninth Circuit has held that when an inmate has a protected liberty interest in parole, due process is satisfied when "some evidence" supports the parole board's decision not to release the prisoner. *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002) (holding that *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445 (1985), which required some evidence to support revocation of inmate's good-time credits, applies to decisions to deny parole reviewed in a Section 2254 habeas petition). In *Biggs*, for example, the Ninth Circuit held that the "some evidence" standard was satisfied by the board's consideration of the gravity of the petitioners' offense, which exhibited a callous disregard for life. *Biggs*, 334 F.3d at 916.

1  The Ninth Circuit later held that the "some evidence" standard was satisfied by reference to
2  undisputed facts about the would-be parolee. *Rosas v. Nielsen*, 428 F.3d 1229, 1232–33 (9th
3  Cir. 2005).

4  This Court has recently considered and denied several habeas petitions. *See*,
5  *e.g.*, *Mejia v. Kane*, 2007 WL 30595 (N.D. Cal. 2007); *see also Machado v. Kane*, 2006 WL
6  449146 (N.D. Cal. 2006). In both decisions, a prisoner had been denied parole while serving an
7  indeterminate life sentence. This Court held in both instances that the board appropriately
8  relied on the gravity of the commitment offense as an important factor in denying parole. *Mejia*
9  and *Machado* both distinguished *Biggs*, where the Ninth Circuit stated in dicta that "[a]
10 continued reliance in the future on an unchanging factor, the circumstance of the offense and
11 conduct prior to imprisonment . . . could result in a due process violation." *Biggs*, 334 F.3d at
12 916–17. Since this statement from *Biggs* was "Ninth Circuit dicta without apparent foundation
13 in any Supreme Court holding," this Court held that it could not "rely upon such a thin reed to
14 overturn, in a habeas action, a state-court ruling." *Mejia*, 2007 WL 30595 *6.

15 The California Court of Appeal denied Russo's state court habeas petition, finding that
16 the facts of the crime and his efforts to avoid arrest after the crime were sufficient grounds for
17 denial of parole. The court of appeal took particular note of Russo's efforts to cover [his] tracks
18 by executing the witness" and his "different self-serving statements to psychiatrists,
19 characterizing the shooting as accidental" (Ans. Exh. G). Based on these circumstances, the
20 court of appeal agreed with the board's determination that "the crime showed a callous
21 disregard for the suffering of the victim and [that] Russo showed no remorse" (*id*. at 3).

22 This circumstance of carrying out a crime in a "dispassionate and calculated manner,
23 such as an execution-style murder" tends to show unsuitability for release under California
24 parole regulations. Cal. Code Regs. Title 15 2402(a), (c)(1)(B). The facts of the crime, as
25 understood by the court of appeal, were not contested by Russo when first presented at his
26 parole hearing (Ans. Exh. E. at 18). Like in this Court's rulings in *Mejia* and *Machado*, this
27 order holds that the board legitimately considered the heinous circumstances of Russo's offense
28 as a decisive factor in refusing to grant parole. Therefore, the court of appeal, which found

7

1  support for its ruling in the facts of Russo's crime and its aftermath, had "some evidence" for
2  denying parole under *McQuillion* and *Biggs*.

### (2) *Russo Received Individual Consideration and Due Process*.

Russo also argues that the Board of Prison Terms denied him individual consideration by refusing to grant him parole. Russo presents no evidence for this claim in his petition. In *Greenholtz*, the Supreme Court held that due process requires only that a state parole system provide an opportunity for the prisoner to be heard, and that when parole is denied, the inmate be informed of the reasons for the denial. *Greenholtz*, 442 U.S. at 16. The transcript of Russo's parole hearing demonstrates that he received full individual consideration under the *Greenholtz* standard. The board reviewed the circumstances of Russo's crime, his lack of prior criminal history and his "discipline free" post-conviction record before declaring him unfit for parole (Ans. Exh. E). Russo had the opportunity to comment on the facts of the case, which he declined, and he spoke to the board about his attempts at self-reform after incarceration (*id.* at 18–24). When the board announced its decision to deny Russo parole, the commissioners explained their rationale: Russo's crime was "especially cruel and callous," his psychiatric evaluations were contradictory, and he had not adequately expressed remorse (*id.* at 70–74). Russo's claim that the board denied him individual consideration thus lacks merit.

### 2. ALLEGED EIGHTH AMENDMENT VIOLATION.

Russo raises the additional claim that he received disproportionate punishment by remaining in prison 22 years after his conviction, when he was sentenced to an indeterminate scheme of seven years to life. This lengthy incarceration, Russo argues, is so disproportionate to the crime that it violates the Eighth Amendment's ban on cruel and unusual punishment. Although the California Penal Code does not require that an eligible inmate receive parole, or even that a parole date be set, it does state that a parole date "normally" shall be set at the first parole hearing; the board, however, can choose not to set a parole date in consideration of the "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses." Cal. Penal Code 3041(a)–(b). Since the board denied

8

1 Russo's request to set a parole date based on the "callous" nature of his offense, Russo's
2 continuing incarceration did not violate California law.

3 Neither the length of Russo's sentence nor the continued denial of parole violate the
4 Eighth Amendment. Outside of the capital context, only sentences that are grossly
5 disproportionate to the crime violate the Eighth Amendment. *See Solem v. Helm*, 463 U.S. 277,
6 289–90 (1983); *United States v. Carr*, 56 F.3d 38, 39 (9th Cir. 1995). The Eighth Amendment
7 will generally uphold sentences that do not exceed the statutory maximum. *See Belgarde v.*
8 *Montana*, 123 F.3d 1210, 1215 (9th Cir. 1997). Petitioner alleges that the "[Board of Parole
9 Hearings'] matrix for kidnaping for robbery" provides for a maximum term of 17 years, in a
10 case of prior planning and significant injury to the victim (First Amd. Pet. 23). Petitioner,
11 however, is incarcerated under the California Penal Code, which states that "any person who
12 kidnaps or carries away any individual to commit robbery [shall] be punished by imprisonment
13 in the state prison for life with possibility of parole." Cal. Penal Code 209(b)(1). Petitioner's
14 indeterminate sentence of seven years to life in prison therefore falls within the statutory
15 maximum for kidnaping for robbery, and does not violate the Eighth Amendment.

16 Under binding Supreme Court law, Russo does not have a presumptive right to parole
17 after serving his minimum term. Convicted inmates can claim "no constitutional or inherent
18 right [to] be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442
19 U.S. at 7. Since Russo remains incarcerated under a valid sentencing scheme, pursuant to
20 California Penal Code 209(b)(1), he cannot claim a constitutional right to be released before the
21 expiration of his indeterminate life term. His Eighth Amendment claim, therefore, is rejected.

22 **3.    OTHER ARGUMENTS.**

23 Russo raises the final claim that the board arbitrarily found that he lacked remorse for
24 the commitment offense. The success or failure of this claim is not material to the outcome of
25 this petition; nevertheless, it fails to persuade. The board relied on Russo's inconsistent
26 explanations for his crime and his failure to contact the victim's family with an offer of
27 restitution. These findings constitute "some evidence" sufficient to support the board's holding

9

that Russo had not shown adequate remorse; they therefore suffice to defeat Russo's claim that the board acted arbitrarily.

### 4. *IRONS V. CAREY* DOES NOT MANDATE RELEASE.

On a final note, in *Irons v. Carey*, 479 F.3d 658, 665 (9th Cir. 2007), the Ninth Circuit recently stated, in dicta, that "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." The *Irons* decision held that the denial of parole to a prisoner who had not yet served the minimum number of years required by his sentence did not violate due process. Unlike the petitioner in *Irons*, Russo has served three times the minimum number of years required by his sentence. The board's 2005 evaluation of Russo, however, suggested that his final release was drawing nigh: the board requested an additional psychological examination before Russo's next hearing and asked Russo to make another attempt to contact the victim's family with an offer of restitution. These actions, the board argued, would "bode well for [Russo] in [his] next hearing" (Ans. Exh. E at 75). Prolonging Russo's commitment indefinitely might very well violate due process under *Irons*. The board took careful account of the circumstances of Russo's crime in 2005, however, and made a reasonable decision, supported by "some evidence," to deny him parole.

## CONCLUSION

Russo is not being held in violation of the Constitution. The court of appeal correctly found that Russo's denial of parole was supported by some evidence and did not otherwise violate Russo's right to due process of law. The court of appeal's decision to deny habeas relief was consistent with clearly-established federal law as determined by the Supreme Court. For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 3, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE